# IN THE UNITED STATES DISTRICT COURT OF THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TRACKTHINGS LLC,** | |
| **Plaintiff,** | |
| **v.** | Case No. 1:21-cv-05440-KPF |
| **NETGEAR, INC.,** | |
| **Defendant.** | |

## DEFENDANT NETGEAR, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR IMPROPER VENUE <u>OR, IN THE ALTERNATIVE, TRANSFER</u>

**Page(s)**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND FACTS .................................................................................... 2

     a.    Plaintiff ...................................................................................................... 2

     b.    NETGEAR ................................................................................................ 2

III.  VENUE IS IMPROPER UNDER § 1400(b) AND *TC HEARTLAND* ............................... 4

     a.    Legal Standards ......................................................................................... 4

     b.    NETGEAR Resides in Delaware, Not the Southern District of New York ........... 6

     c.    NETGEAR Does Not Have a "Regular and Established Place of Business" in the Southern District of New York ................................................................... 6

IV.  IN THE ALTERNATIVE TO DISMISSAL, THE COURT SHOULD TRANSFER THE CASE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER § 1406(a) ............................................................................................... 13

     a.    The Convenience of the Witnesses Favors Transfer ............................................. 14

     b.    The Location of the Evidence Favors Transfer ..................................................... 17

     c.    The Convenience of the Parties Favors Transfer .................................................. 18

     d.    The Locus of Operative Facts Is California and Favors Transfer ......................... 18

     e.    Availability of Process Over Witnesses Favors Transfer ...................................... 20

     f.    The Relative Means of the Parties is Neutral ........................................................ 20

     g.    The Forum's Familiarity with the Governing Law is Neutral .............................. 20

     h.    Plaintiff's Choice of Forum Should be Accorded Little, If Any, Weight Against Transfer ..................................................................................................... 21

     i.    Trial Efficiency and The Interest of Justice Favor Transfer ................................. 21

V.   CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010)..................................................................19

*AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*,
    326 F. Supp. 2d 525 (S.D.N.Y. 2004)........................................................15

*In re Apple*,
    979 F.3d 1332 (Fed. Cir. 2020).............................................................17, 19

*CAO Lighting, Inc. v. Light Efficient Design*,
    No. 4:16-cv-00482, 2017 WL 4556717 (D. Idaho Oct. 11, 2017) ..........11

*Catlin Indem. Co. v. New Eng. Law/Bos.*,
    No. 15-cv-4836 (JMF), 2016 WL 447849 (S.D.N.Y. Feb. 4, 2016) ......14

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000)..........................................................14

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
    254 F. Supp. 3d 836 (E.D. Va. 2017) ........................................................10

*Correct Transmission LLC v. ADTRAN, Inc.*,
    No. 6:20-cv-00669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021) ............11

*In re Cray*,
    871 F.3d 1355 (Fed. Cir. 2017)................................................. *passim*

*Dickerson v. Novartis Corp.*,
    315 F.R.D. 18 (S.D.N.Y. 2016) ...............................................14, 18, 21

*EmeryAllen, LLC v. MaxLite Inc.*,
    No. 2:20-cv-4332-RMG, 2021 WL 2111159 (D.S.C. May 25, 2021)....................10

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
    928 F. Supp. 2d 735 (S.D.N.Y. 2013)........................................................16

*FOX Factory, Inc. v. SRAM, LLC*,
    No. 3:16-cv-00506-WHO, 2018 WL 317839 (N.D. Cal. Jan. 8, 2018)....................10

*Fuji Photo Film Co. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006)........................................................17

# TABLE OF AUTHORITIES

**Page(s)**

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009)...............................................................16, 17

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020)..........................................................................12

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)............................................................................................19

*Hand Held Prods., Inc. v. Code Corp.*,
265 F. Supp. 3d 640 (D.S.C. 2017)....................................................................10

*Hatfield v. Asphalt Int'l, Inc.*,
No. 03 Civ. 1372 DAB, 2004 WL 287680 (S.D.N.Y. Feb. 11, 2004)....................13

*Hix v. Morgan Stanley & Co.*,
No. 15CV217-LTS-JCF, 2015 WL 1726548 (S.D.N.Y. Apr. 15, 2015)..................21

*In re Hulu, LLC*,
No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...........................16, 18

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
419 F. Supp. 2d 395 (S.D.N.Y. 2005)............................................................21, 22

*Int'l Sec. Exch., LLC v. Chicago Bd. Options Exh. Inc.*,
No. 06-cv-13445(RMB)(THK), 2007 WL 1541087 (S.D.N.Y. May 24, 2007)....................15

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*,
No. SA CV 17-1748-DOC, 2018 WL 4963129 (C.D. Cal. June 22, 2018)..............5

*IPCO Hosp. Supply Corp. v. Les Fils D'Auguste Maillefer S.A.*,
446 F. Supp. 206 (S.D.N.Y. 1978)........................................................................7

*Koss Corp. v. Skullcandy, Inc.*,
No. 6:20-cv-00664-ADA, 2021 WL 1226557 (W.D. Tex. March 31, 2021).........12

*Leroy v. Great W. United Corp.*,
443 U.S. 173 (1979).............................................................................................1

*Level Sleep LLC v. Dormeo North Am.*,
No. 2:18-cv-00120-RWS, 2019 WL 458467 (E.D. Tex. Feb. 1, 2019)..................6

*Lewis v. Pension Ben. Guar. Corp.*,
No. 14-cv-03838, 2015 WL 5577377 (N.D. Ga. Aug. 11, 2015)..........................6

# TABLE OF AUTHORITIES

Page(s)

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F. Supp. 3d 385 (S.D.N.Y. 2014)......................................................................18

*In re Link_A_Media Devices Corp*,
662 F.3d 1221 (Fed. Cir. 2011)......................................................................17, 21

*Meyers v. Allstate Ins. Co.*,
No. 08 Civ. 4769 (DF), 2009 WL 804672 (S.D.N.Y. Mar. 26, 2009)...................19

*Minette v. Time Warner*,
997 F.2d 1023 (2d Cir. 1993)..............................................................................13

*Multiwave Sensor Inc. v. Sunsight Instruments, LLC*,
No. 1:16-cv-1361-GHW, 2017 WL 1498058 (S.D.N.Y. Apr. 26, 2017) ...............19

*NetSoc, LLC v. Chegg Inc.*,
No. 18-cv-10262 (RA), 2019 WL 4857340 (S.D.N.Y. Oct. 2, 2019) .....................5

*Omega Pats., LLC v. CalAmp Corp.*,
No. 6:13-cv-1950-Orl-40DCI, 2017 WL 4990654 (M.D. Fla. Sept. 22, 2017).......6

*Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*,
No. 17-cv-1725 (JPO), 2018 WL 1478047 (S.D.N.Y. Mar. 26, 2018) .............5, 12

*Pers. Audio, LLC v. Google, Inc.*,
280 F. Supp. 3d 922 (E.D. Tex. 2017) ....................................................................5

*Reflection, LLC v. Spire Collective LLC*,
No. 17-cv-1603-GPC(BGS), 2018 WL 310184 (S.D. Cal. Jan. 5, 2018)...............10

*RegenLab USA LLC v. Estar Techs. Ltd.*,
335 F. Supp. 3d 526 (S.D.N.Y. 2018).....................................................................9

*Rensselaer Polytechnic Inst. v. Amazon.com*,
No. 1:18-cv-00549, 2019 WL 3755446 (N.D.N.Y. Aug. 7, 2019)...........................5

*Rosco, Inc. v. Safety Vision LLC*,
No. 19-cv-8933 (JMF), 2020 WL 5603794 (S.D.N.Y. Sept. 18, 2020) .........7, 9, 10

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ........................................................................19, 20

*SBAV LLP v. Porter Bancorp, Inc.*,
No. 13-cv-372 (PAE), 2013 WL 3467030 (S.D.N.Y. July 10, 2013)....................19

**TABLE OF AUTHORITIES**

**Page(s)**

*Sentegra, LLC v. Asus Computer Int'l*,
  No. 1:15-cv-3768-GHW, 2016 WL 3093988 (S.D.N.Y. June 1, 2016) ...............17, 18, 20, 21

*Smart Skins LLC v. Microsoft Corp.*,
  No. 14-cv-10149, ECF No. 34 (S.D.N.Y. Mar. 27, 2015).................................................15, 21

*SNI Sols., Inc. v. Univar USA, Inc.*,
  No. 4:18-cv-4090, 2019 WL 3306215 (C.D. Ill. July 23, 2019) ...........................................10

*Talsk Rsch. Inc. v. Evernote Corp.*,
  No. 16-cv-2167, 2017 WL 4269004 (N.D. Ill. Sept. 26, 2017)..............................................11

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017).........................................................................................1, 4, 6, 13

*Uni-Sys., LLC v. U.S. Tennis Ass'n Nat'l Tennis Ctr. Inc.*,
  No. 17-cv-147 (KAM)(CLP), 2020 WL 1694490 (E.D.N.Y. April 7, 2020)..........................5

*Vaxcel Int'l Co. v. Minka Lighting, Inc.*,
  No. 18-cv-0607, 2018 WL 6930772 (N.D. Ill. July 11, 2018) ..............................................10

*Virginia Innovation Scis., Inc. v. Amazon.com*,
  No. 4:18-cv-474, 2019 WL 3082314 (E.D. Tex. July 15, 2019)............................................5

*Welch Sci. Co. v. Hum. Eng'g Inst., Inc.*,
  416 F.2d 32 (7th Cir. 1969) ...................................................................................................6

*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
  No. 17-cv-3258, 2018 WL 1811354 (S.D. Tex. Apr. 17, 2018)............................................10

*Zaxcom, Inc. v. Lectrosonics, Inc.*,
  No. 17-cv-3408 (NGG) (SJB), 2019 WL 418860 (E.D.N.Y. Feb. 1, 2019).......................9, 10

*In re ZTE (USA)*,
  890 F.3d 1008 (Fed. Cir. 2018)...........................................................................................4, 5

**Statutes**

28 U.S.C.
  § 1391...................................................................................................................................5
  § 1400(b) ..................................................................................................................... *passim*
  § 1406..............................................................................................................................13, 23

# TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(B) ..............................................................................................20

## I. INTRODUCTION

Defendant NETGEAR, Inc. ("NETGEAR") is neither incorporated in New York nor has a regular and established place of business in this District. Accordingly, Plaintiff TrackThings LLC ("Plaintiff") has not met its burden of establishing proper venue under the patent venue statute, the purpose of which is to "define the exact jurisdiction of the federal courts in actions to enforce patent rights," *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518 (2017), and "protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979).

Plaintiff acknowledged that NETGEAR is incorporated in Delaware in its Complaint, and as NETGEAR has explained to Plaintiff, its contacts with this District as of the date of the Complaint (June 21, 2021) are insufficient to accord venue. First, NETGEAR does not own, lease, or rent any physical place in this District and terminated its lease to an office space at 625 Broadway in New York City in May 2020, more than a year before Plaintiff filed suit. Second, NETGEAR has five employees that work from home in New York state, but none have homes that are in this District, and even if they did, their home offices are not places of NETGEAR. Finally, NETGEAR's independent authorized retailers or distributors are irrelevant to the venue analysis for NETGEAR. Thus, there is no way in which NETGEAR has a regular and established place of business in this District in view of Federal Circuit law.

As venue is improper, the case should either be dismissed or, in lieu of dismissal, NETGEAR respectfully requests that the Court transfer the case to the Northern District of California—a district with proper venue that is more convenient. Indeed, six of the nine factors for transfer that this Court evaluates weigh in favor of transfer: the convenience of witnesses, the location of relevant evidence, the convenience of the parties, the locus of operative facts, the availability of the process to compel attendance of unwilling witnesses, and trial efficiency and the

interests of justice. Two are neutral: the relative means of the parties and a forum's familiarity with the governing law. While the weight accorded to the plaintiff's choice of forum may weigh against transfer, this factor should be afforded little, if any, weight here because this District is not Plaintiff's home forum and the operative facts of this suit are not tied to this District, and under the facts of this suit, this factor is at best neutral.

NETGEAR's motion to dismiss for improper venue should therefore be granted, or in lieu of dismissal, the Court should transfer this case to the Northern District of California.

## II.  BACKGROUND FACTS

### a.  Plaintiff

Plaintiff, a non-practicing entity, is a New Jersey limited liability company with its principal place of business located in Murray Hill, New Jersey. (Dkt. 1 ("Complaint"), ¶ 1.) According to the face of the asserted patents, the sole inventor, Thaddeus Gabara, resides in Murray Hill, New Jersey. (Dkt. 1-1, 1-2, 1-3.) The law firm that prosecuted the asserted patents, Tyrean Patent Prosecution Law Firm, is located in Berkeley Heights, New Jersey. (*Id.*)

### b.  NETGEAR

As Plaintiff acknowledges, NETGEAR is incorporated in Delaware with its headquarters and principal place of business in San Jose, California. (Complaint, ¶ 2.) NETGEAR's only U.S. location is its headquarters in San Jose, California. (Declaration of Karen Wu ("Wu Decl."), ¶¶ 5-6; *see also* NETGEAR's webpage at [https://www.netgear.com/about/contact-us/](https://www.netgear.com/about/contact-us/) (listing only "NETGEAR Headquarters San Jose" and "NETGEAR Canada" as NETGEAR's locations in the Americas).) Plaintiff, however, relies on stale information to allege that, as of the date of the Complaint, June 21, 2021, "NETGEAR conducts and has conducted business operations within the Southern District of New York, including through its offices at 625 Broadway, 11th Floor, New York, NY 10012." (Complaint, ¶ 2.) NETGEAR inherited this space when it acquired a small

startup called Meural in 2018. (Wu Decl., ¶ 6; Exhibit 1.) NETGEAR terminated its lease for this office space in May 2020, over a year before Plaintiff filed suit.[1] (Wu Decl., ¶ 6; Exhibit 2.) NETGEAR thus has no place of business in this District, and NETGEAR does not presently have any intention of reopening an office space in New York City. (Wu Decl., ¶ 6.) Since May 2020, NETGEAR's sole office in the United State is in San Jose, California.[2] (*Id.*)

At the time Plaintiff filed the Complaint—which is the relevant time for measuring whether venue is proper—NETGEAR employed four individuals in New York state.[3] (*Id.*, ¶¶ 8-10.) Between June 2021 and November 5, 2021, NETGEAR hired one additional individual in New York state.[4] (*Id.*) NETGEAR's employees in New York state work from their homes and, critically, none are in this District. (*Id.*, ¶ 10.) NETGEAR does not pay for these employees' homes and does not incentivize them to live in New York. (*Id.*, ¶ 11.)

Since November 2017, b8ta has been an authorized reseller of NETGEAR products in New York City. (Declaration of Paul Friday ("Friday Decl."), ¶ 5; Exhibits C-G.) b8ta is an independent

---

[1] Plaintiff's counsel identified nine items it expected NETGEAR to address in the present Motion on October 29, 2021, one week before NETGEAR's Motion was due to the Court. (Declaration of Naina Soni ("Soni Decl."), Exhibit i.) NETGEAR has addressed Plaintiff's requests within reason and relevance to this Motion, including, by attaching, for example, NETGEAR's lease and termination of the lease for the office space at 625 Broadway. (Wu Decl., Exhibits 1, 2.)

[2] NETGEAR updated its careers website (found at https://www.netgear.com/about/careers/) in September 2021 to correct inaccurate information regarding its office locations, identifying its headquarters in San Jose, California and stating that its "Americas presence also includes an office in Richmond, Canada." (Wu Decl., ¶ 5.) NETGEAR's career center (found at: https://phh.tbe.taleo.net/phh02/ats/careers/v2/jobSearch?act=redirectCwsV2&cws=38&org=NETGEAR) only lists open positions at "USA-San Jose, CA" and "USA-Home Office" for those who work remotely. (*Id.*)

[3] Two of the individuals presently employed by NETGEAR who live in New York state came to NETGEAR through NETGEAR's acquisition of Meural. (Wu Decl., ¶¶ 8, 10.) Most of the other Meural employees left NETGEAR in 2019. (*Id.*, ¶ 8.)

[4] NETGEAR previously had one contractor and one intern who were located in New York state as of June 21, 2021, but both individuals are no longer associated with NETGEAR. (Wu Decl., ¶ 9.) The contractor left the company on July 9, 2021 and the intern completed her internship on August 27, 2021. (*Id.*)

company that distributes NETGEAR products as an independent contractor and is not an agent of NETGEAR. (Friday Decl. ¶ 5; *see also* Exhibit F, §§ 3, 12(b).) b8ta provides all retail staff for its business locations and NETGEAR does not employ any individuals who work for b8ta. (Friday Decl., ¶ 5; Exhibit G, § 6(a)(iv).) NETGEAR also previously had another reseller in New York City, Showfields, but that relationship lasted from March 2019 to March/April 2020. (Friday Decl., ¶ 4, Exhibits A, B.) B&H Photo Video is a third-party reseller of NETGEAR products, but unlike b8ta and Showfields, NETGEAR has no direct contact with B&H. (Friday Decl., ¶ 6.) Instead, B&H purchases the NETGEAR products it resells from a third-party NETGEAR distributor. (*Id.*)

## III.     VENUE IS IMPROPER UNDER § 1400(B) AND *TC HEARTLAND*

In a patent infringement case, venue is proper as to a domestic corporation only where the corporation resides or has a regular and established place of business. *TC Heartland*, 137 S. Ct. at 1516. Here, venue is improper because: (1) NETGEAR does not reside in the Southern District of New York and (2) NETGEAR does not have a regular and established place of business in the Southern District of New York. *See* 28 U.S.C. § 1400(b). Thus, under § 1400(b), this case must be dismissed or, in the alternative, transferred to the Northern District of California.

### a.     Legal Standards

The patent venue statute, 28 U.S.C. § 1400(b), "is the sole and exclusive provision controlling venue in patent infringement actions" and is interpreted in accordance with Federal Circuit law. *TC Heartland*, 137 S. Ct. at 1519 (internal quotations omitted). Pursuant to § 1400(b), "[a]ny civil action for patent infringement may be in the judicial district [i] where the defendant resides, or [ii] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "[U]pon motion by the Defendant challenging venue in a patent case, the [p]laintiff bears the burden of establishing proper venue." *In re ZTE (USA)*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). When applying the patent venue statute, § 1400(b)

"should not be liberally construed in favor of venue." *Id.* at 1014 (citation omitted); *see also Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-cv-1725 (JPO), 2018 WL 1478047, at *2 (S.D.N.Y. Mar. 26, 2018).

While the Federal Circuit has not addressed the point in time in which venue is to be analyzed under § 1400(b), courts in this District and others have concluded that venue under § 1400(b) should be analyzed, as under 28 U.S.C. § 1391, at the time the Complaint is filed. *See NetSoc, LLC v. Chegg Inc.*, No. 18-cv-10262 (RA), 2019 WL 4857340, at *3 (S.D.N.Y. Oct. 2, 2019) ("The court reasoned that, because § 1400(b) refers to where a civil action 'may be *brought*,' venue should be assessed based on the facts existing at the time the plaintiff commences the action. This Court agrees. As another court noted, 'bringing' a civil action refers to the act of filing a complaint, and analyzing venue at that time comports with the Federal Circuit's reminder that venue determinations 'must be closely tied to the language of the statute.'") (citing *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) and *Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 930 (E.D. Tex. 2017) (reaching the same conclusion)); *Uni-Sys., LLC v. U.S. Tennis Ass'n Nat'l Tennis Ctr. Inc.*, No. 17-cv-147 (KAM)(CLP), 2020 WL 1694490, at *7 (E.D.N.Y. April 7, 2020) ("[T]he court agrees with those decisions holding that venue is determined based on the facts existing at the time the plaintiff commences an action."); *Rensselaer Polytechnic Inst. v. Amazon.com*, No. 1:18-cv-00549 (BKS/CFH), 2019 WL 3755446, at *9 (N.D.N.Y. Aug. 7, 2019) ("[T]he patent venue statute is phrased in the present tense: the issue is whether the defendant 'has' . . . a regular and established place in the district."); *Virginia Innovation Scis., Inc. v. Amazon.com*, No. 4:18-cv-474, 2019 WL 3082314, at *8 (E.D. Tex. July 15, 2019) ("[W]hen determining whether venue is proper, the Court is to look at the time the complaint is filed."); *Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*, No. SA CV 17-1748-DOC (JDex), 2018 WL 4963129, at *6 n.2 (C.D. Cal.

June 22, 2018) ("Thus, in applying a strict statutory construction, venue under § 1400(b) should be analyzed based on the facts and circumstances that exist at the time an action is filed."); *Omega Pats., LLC v. CalAmp Corp.*, No. 6:13-cv-1950-Orl-40DCI, 2017 WL 4990654, at *2 (M.D. Fla. Sept. 22, 2017) ("'Venue must be determined based on the facts at the time of the filing.'") (quoting *Lewis v. Pension Ben. Guar. Corp.*, No. 14-cv-03838, 2015 WL 5577377, at *3 (N.D. Ga. Aug. 11, 2015)).[5]

### b. NETGEAR Resides in Delaware, Not the Southern District of New York

A domestic corporation "'resides' only in its State of incorporation for purposes of" § 1400(b). *TC Heartland*, 137 S. Ct. at 1517. NETGEAR is incorporated in Delaware. (Complaint, ¶ 2.) As such, venue in the Southern District of New York cannot be based on where NETGEAR "resides."

### c. NETGEAR Does Not Have a "Regular and Established Place of Business" in the Southern District of New York

For venue to lie in the Southern District of New York, the second prong of § 1400(b) must apply. To determine whether it applies, courts employ a three-part test set by the Federal Circuit in *In re Cray*: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." 871 F.3d at 1360. "If

---

[5] The minority of cases, based on a 1969 7th Circuit decision, hold that venue should be determined based on the facts existing at the time the cause of the action accrues *if the suit is filed within a reasonable time thereafter*. *See Welch Sci. Co. v. Hum. Eng'g Inst., Inc.*, 416 F.2d 32, 35-36 (7th Cir. 1969) ("venue is properly lodged in the district if the defendant had a regular and established place of business at the time the cause of action accrued, and *suit is filed within a reasonable time thereafter*.") (emphasis added); *Level Sleep LLC v. Dormeo North Am.*, No. 2:18-cv-00120-RWS, 2019 WL 458467, at *2-*3 (E.D. Tex. Feb. 1, 2019) (finding that the accused infringers had closed their place of operation in the forum, terminated their lease of office space, and sold all inventory at least four months before the complaint was filed and that *this four month period was long enough to avoid the Welsh rule* regarding filing suit within reasonable time after the defendant's departure from the forum, even though other public representations, such as the accused infringers' website and filings in the state corporation office still listed the forum address as an address for its business).

any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id.* "[H]aving a 'regular and established place of business' involves more than 'doing business.'" *IPCO Hosp. Supply Corp. v. Les Fils D'Auguste Maillefer S.A.*, 446 F. Supp. 206, 208 (S.D.N.Y. 1978).

Plaintiff cannot establish that venue is proper under the second prong of § 1400(b), because NETGEAR has no physical place in this District. Moreover, NETGEAR's employees who work from home in New York state cannot create venue for NETGEAR, because their homes are not places of NETGEAR's business nor are their homes even in this District. Finally, the presence of third parties, such as b8ta, Showfields, and B&H Photo Video, distributing NETGEAR's products is irrelevant to the § 1400(b) analysis as their places of business are not places of NETGEAR.

<u>First</u>, as of June 2021, NETGEAR had no physical place in this District. Indeed, NETGEAR terminated the lease for the location to which Plaintiff cites in its Complaint in May 2020, over a year before Plaintiff filed the Complaint. (Wu Decl., ¶ 6; Exhibits 1, 2.) Since then, NETGEAR's sole office in the United States is in San Jose, California. (Wu Decl., ¶¶ 5-6.) That NETGEAR's website contained stale information about an office in New York until September 2021 is of no import. *See Rosco, Inc. v. Safety Vision LLC*, No. 19-cv-8933 (JMF), 2020 WL 5603794, at *2 (S.D.N.Y. Sept. 18, 2020) (finding the fact that "Safety Vision represented on its website, in text and with dotted maps, that its Satellite offices are strategically positioned in . . . [locations across the country, including] New York" is "not sufficient" for venue); *In re Cray*, 871 F.3d at 1364 ("[T]he mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location.") Thus, though NETGEAR's websites[6]—which have since been updated—mentioned a

---

[6]    Again, NETGEAR updated its careers websites (found at https://www.netgear.com/about/careers/) in September 2021 to correct inaccurate information regarding its office locations, identifying its headquarters in San Jose, California and stating that

New York location until September 2021, since May 2020, NETGEAR was not engaging in business from an office space in this District.

Second, the homes of the NETGEAR employees in New York state do not constitute places of business belonging to NETGEAR. As of June 21, 2021, NETGEAR had four employees working from home in New York state in Monroe, Kings, and Erie Counties.[7] (Wu Decl., ¶¶ 8-10.) Since then, NETGEAR has hired an individual who works from home in Onondonga County. (*Id.*, ¶ 10.) None of these employees' homes are in this District. (*Id.*) Even if they were, they cannot constitute places of business for NETGEAR, because their homes are not "a place *of the defendant*" and instead are "solely a place of the defendant's employee[s]." *In re Cray*, 871 F.3d at 1363. NETGEAR has not ratified or established any of these employees' homes as a place of business, nor does NETGEAR own, lease, or rent any portion of these employees' homes. (Wu Decl., ¶ 11.)

---

its "Americas presence also includes an office in Richmond, Canada." (Wu Decl., ¶ 5.) NETGEAR's career center only lists open positions at "USA-San Jose, CA" and "USA-Home Office" for those who work remotely. (*Id.*)

[7] In correspondence with NETGEAR and the Court, Plaintiff pointed to named inventors on patents assigned to NETGEAR as purported evidence that NETGEAR has additional employees in this District. (*See* Soni Decl., Exhibit ii at 6-7; *see also* Dkt. 20 at 2.) The inventors that are listed on the three patents Mr. Gerson identified in his August 24, 2021 email as being from New York, NY, stopped working at NETGEAR before the Complaint in this case was filed. For example, U.S. Patent No. 9,603,153 lists two inventors: Jonathan Daub from New York, NY and Patrick Lazar from San Jose, CA. (*See* Soni Decl., Exhibit iii.) This patent was filed on October 24, 2013. (*Id.*) In July 2018, Mr. Daub left NETGEAR. (Wu Decl., ¶ 14.) Two additional patents pertaining to Meural products and technologies, U.S. Patent Nos. 10,891,022 and 10,945,018, list Vladimir Vukicevic, Or Baron, Jerry Hu, and Jordan Cooperman as inventors. (*See* Soni Decl., Exhibits iv, v.) The latter patent also lists Poppy Simpson as an inventor. (Soni Decl., Exhibit v.) These two Meural patents were filed in November 2018 and December 2018, respectively. (Soni Decl., Exhibits iv, v.) Mr. Cooperman and Ms. Simpson are both identified as living in Brooklyn, NY— out of this District—and while Ms. Simpson still works for NETGEAR from her home in Brooklyn, Mr. Cooperman left NETGEAR with the majority of Meural employees, in 2019. (Soni Decl., Exhibits iv, v, vi; Wu Decl., ¶ 8.) Messrs. Vukicevic, Baron, and Hu are identified as living in New York, NY, but these two patents were filed before these three gentlemen left NETGEAR. (Soni Decl., Exhibits iv, v, vii, viii, ix; Wu Decl., ¶ 8 (Messrs. Vukicevic and Hu left NETGEAR in 2019 and Mr. Baron left NETGEAR in April 2021).) Thus, none of these individuals confer venue on NETGEAR in this District.

*See In re Cray*, 871 F.3d at 1363. NETGEAR does not "incentivize" these individuals to live in the state, let alone the District, (Wu Decl., ¶ 11), and "it doesn't matter" to NETGEAR where these employees "choose[] to reside" in the United States. *See Rosco*, 2020 WL 5603794 at *2; *In re Cray*, 871 F.3d at 1363 ("[I]f an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant."); *Zaxcom, Inc. v. Lectrosonics, Inc.*, No. 17-cv-3408 (NGG) (SJB), 2019 WL 418860, at *5 (E.D.N.Y. Feb. 1, 2019) ("Plaintiff has not demonstrated that [the employee's] employment is conditioned on his continued residence 'in the district.'"). Additionally, "all expense reimbursements and administrative support" for NETGEAR's employees in New York state are "provided from outside of the district" from NETGEAR's headquarters in San Jose, California.[8] (Wu Decl., ¶ 12.) *See In re Cray*, 871 F.3d at 1365.

To the extent Plaintiff relies on *RegenLab USA LLC v. Estar Techs. Ltd.*, that case is distinguishable from the situation here. There, "*all* Eclipse employees work[ed] from home" and "home offices constitute[d] a primary physical location for Eclipse's business." 335 F. Supp. 3d 526, 549 (S.D.N.Y. 2018) (emphasis added). Here, by contrast (absent the COVID-19 pandemic),

---

[8] As noted above, on October 29, 2021, Plaintiff identified categories of information to be addressed in NETGEAR's Motion. (Soni Decl., Exhibit i.) Several of Plaintiff's requests, however, are unduly burdensome and untethered to the relevant facts to the venue analysis, which occurs at the time the Complaint was filed. For example, NETGEAR has provided facts in its Motion and supporting declarations regarding employees in New York state as of the date of the Complaint, (*see, e.g.,* Wu Decl., ¶¶ 8-10), yet Plaintiff broadly requested "when NETGEAR employees (including any contractors, interns . . .) last lived or worked in this District." (Soni Decl., Exhibit i.) It is irrelevant to the venue analysis when NETGEAR employees last lived in the District; instead, the venue analysis considers those employees who lived in the District as of the date of the Complaint and whether their homes can be considered places of business for NETGEAR. As of June 21, 2021, no NETGEAR employees lived in this District and their homes are not places of business for NETGEAR for the reasons provided above.

the majority of NETGEAR's U.S.-based employees work from the San Jose headquarters. (Wu Decl., ¶ 11.) Thus, the situation here is far more analogous to the one in *Zaxcom*, where the "business model [was] to have" most of its employees at its headquarters and only a few individuals working remotely. 2019 WL 418860 at *7 (distinguishing *RegenLab* on this basis); *Rosco*, 2020 WL 5603794 (same).

Third, b8ta, Showfields, and B&H Photo Video are independent companies that are (or were) authorized resellers and distributors of NETGEAR's products. (Friday Decl., ¶¶ 4-6.) Therefore, b8ta, Showfields, and B&H Photo Video are "irrelevant" to the venue inquiry. *EmeryAllen, LLC v. MaxLite Inc.*, No. 2:20-cv-4332-RMG, 2021 WL 2111159, at *3 (D.S.C. May 25, 2021); *Hand Held Prods., Inc. v. Code Corp.*, 265 F. Supp. 3d 640, 645 (D.S.C. 2017) ("The presence of a third-party distributing Code's products also is irrelevant."); *SNI Sols., Inc. v. Univar USA, Inc.*, No. 4:18-cv-4090, 2019 WL 3306215, at *2 (C.D. Ill. July 23, 2019) ("An independent distributor is not a 'place of the defendant.'"); *Vaxcel Int'l Co. v. Minka Lighting, Inc.*, No. 18-cv-0607, 2018 WL 6930772, at *3 (N.D. Ill. July 11, 2018) ("What is more, independent distributors, such as authorized retailers and Home Depot, do not suffice to establish venue under § 1400(b)."); *Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. 17-cv-3258, 2018 WL 1811354, at *2 (S.D. Tex. Apr. 17, 2018) (finding that presence of third-party distributors in the district was insufficient for venue under § 1400(b)); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 254 F. Supp. 3d 836, 840 (E.D. Va. 2017) ("The presence of independent dealers in a district does not qualify as a 'regular and established place of business.'"); *FOX Factory, Inc. v. SRAM, LLC*, No. 3:16-cv-00506-WHO, 2018 WL 317839, at *3 (N.D. Cal. Jan. 8, 2018) (same); *Reflection, LLC v. Spire Collective LLC*, No. 17-cv-1603-GPC(BGS), 2018 WL 310184, at *2-*3 (S.D. Cal. Jan. 5, 2018) (storing products in an independent distributor's warehouse and selling products in the state through a third party

are not sufficient to show venue under the statute); *CAO Lighting, Inc. v. Light Efficient Design*, No. 4:16-cv-00482, 2017 WL 4556717, at *3 (D. Idaho Oct. 11, 2017) (physical locations with regular and established businesses belonging to preferred partner distributors do not establish venue). Moreover, NETGEAR has no direct contact with B&H Photo Video and B&H purchases the NETGEAR products it resells. (Friday Decl., ¶ 6.) Further, NETGEAR's past relationship with Showfields has no bearing to the venue analysis—its contract with Showfields terminated in March/April 2020, more than a year before Plaintiff filed the present suit. (*Id.* ¶ 4; Exhibits A, B.)

NETGEAR's contracts with b8ta reinforce the role of b8ta as an independent third-party contractor that provides its own employees and staff for the b8ta locations at which NETGEAR's products are sold. (Friday Decl., ¶ 5; *see also* Exhibit F, §§ 3 ███████████ ███████████████████████████████████████████████████ ), 12(b) ███████████████████████████████████████████████████ ); Exhibit G, § 6(a)(iv) ███████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████ ).)

Any existing b8ta location in this District is, therefore, insufficient to hale NETGEAR into court in this District. *See Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-cv-00669-ADA, 2021 WL 1967985, at *3 (W.D. Tex. May 17, 2021) ("this argument falls victim to the same analytical misstep . . . since ADTRAN encouraged Palco as an independent contractor, its facility cannot be ADTRAN's regular and established place of business"); *Talsk Rsch. Inc. v. Evernote Corp.*, No. 16-cv-2167, 2017 WL 4269004, at *3-*4 (N.D. Ill. Sept. 26, 2017) (provision in

agreement stated, "It is the parties' express intention that you are an independent contractor" and finding that activity of these contractors do not establish a regular and established place of business for defendant). b8ta's locations cannot be NETGEAR's regular and established place of business.

The Court should reject any argument Plaintiff makes to characterize the NETGEAR/b8ta relationship otherwise, and if Plaintiff argues that the agreement between NETGEAR and b8ta is actually a lease agreement for space in b8ta's showroom, that argument too is insufficient to confer venue upon NETGEAR. As in *Peerless Network*, even if NETGEAR were leasing some wall or shelf space from b8ta to display its products, to be a "place of business, 'the defendant must actually engage in business from that location.'" 2018 WL 1478047 at *3-*4 (quoting *In re Cray*, 871 F.3d at 1364). This requires "some employee or agent of the defendant to be conducting business at the location in question." *Id.* at *4*; *see also Koss Corp. v. Skullcandy, Inc.*, No. 6:20-cv-00664-ADA, 2021 WL 1226557, at *2 (W.D. Tex. March 31, 2021) ("Leased shelf or rack-space can serve as a 'regular and established place of business' under the Patent Venue Statue if the defendant also has an employee or agent conducting business in that district" and finding leased space in BestBuy insufficient for venue); *In re Google LLC*, 949 F.3d 1338, 1343-44 (Fed. Cir. 2020) (holding that shelf space did not constitute a regular and established place of business because the defendant had no employee or agent regularly conducting its business at the alleged place). There are no NETGEAR employees that work at b8ta's locations; rather, per the parties' agreements, b8ta provides all the staff for its locations, including those where NETGEAR displays its products. (Friday Decl., ¶ 5; *see also* Exhibit G, § 6(a)(iv).) Therefore, NETGEAR's relationship with b8ta is irrelevant to the venue analysis and venue is improper in this District.[9]

---

[9] Plaintiff broadly seeks information regarding "[a]ny NETGEAR employee's, agent's, or contractor's role in arranging, controlling, or operating these locations [referring to b8ta, Showfields, and B&H]." (Soni Decl., Exhibit i.) As explained above, NETGEAR's relationship

Plaintiff has not met the requirements of § 1400(b) as described in *TC Heartland*, and

Plaintiff's Complaint should be dismissed.[10]

## IV.   IN THE ALTERNATIVE TO DISMISSAL, THE COURT SHOULD TRANSFER THE CASE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER § 1406(A)

When venue is improper, as it is here, the district court "shall dismiss, or if it be in the

interest of justice, transfer such case to any district or division in which it could have been

brought." 28 U.S.C. § 1406(a); *see Hatfield v. Asphalt Int'l, Inc.*, No. 03 Civ. 1372 DAB, 2004

WL 287680, at *4 (S.D.N.Y. Feb. 11, 2004) ("The decision to transfer rather than dismiss 'lies

within the sound discretion of the district court,' keeping in mind the general purpose of § 1406's

transfer provision is to 'remov[e] whatever obstacles may impede an expeditious and orderly

adjudication of cases and controversies on their merits.'") (quoting *Minette v. Time Warner*, 997

F.2d 1023, 1026 (2d Cir. 1993)). In deciding whether transfer would serve the interest of justice,

courts in this District are guided by the following set of nine factors: (1) the convenience of the

witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof;

(3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process

to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's

familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and

(9) trial efficiency and the interests of justice, based upon the totality of the circumstances. *See*

---

with these third parties is irrelevant, because third-party distributors cannot confer venue onto
NETGEAR in this District. Moreover, NETGEAR has provided contracts between it and these
entities and these agreements, and the dates thereof, speak for themselves. (*See, e.g.*, Friday Decl.
and Exhibits thereto.) NETGEAR has no contractual relationship with B&H Photo Video. (*See*
Friday Decl., ¶ 6.)

[10] As mentioned above, on October 29, 2021—one week before NETGEAR's motion was due—
counsel for Plaintiff identified nine various items it "expect[ed]" NETGEAR's "upcoming motion,
a declaration and documents" to include. (*See* Soni Decl., Exhibit i.) As explained above,
NETGEAR's Motion, declarations, and exhibits address the issues raised by Plaintiff (within
reason) and support the facts NETGEAR previously provided to Plaintiff in various emails and
letters demonstrating improper venue in this District.

*Catlin Indem. Co. v. New Eng. Law/Bos.*, No. 15-cv-4836 (JMF), 2016 WL 447849, at *3 (S.D.N.Y. Feb. 4, 2016). "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).

Because this case could have been properly brought in the Northern District of California under § 1400(b), and the factors weigh in favor of transfer, NETGEAR respectfully requests that the Court transfer the case to the Northern District of California.

### a.     The Convenience of the Witnesses Favors Transfer

Of the factors relevant to a court's analysis, the first factor—the convenience of witnesses—is typically regarded as the most important consideration. *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 27 (S.D.N.Y. 2016). In this regard, the courts will weigh the convenience of third-party witnesses more heavily than that of party witnesses. *Id.* Here, this factor weighs in favor of transfer to the Northern District of California.

To date, NETGEAR has identified certain third-party witnesses who may be relevant to NETGEAR's invalidity defense, such as third-party prior artists from third-party Trapeze Networks, Inc., which was acquired in 2010 by Juniper Networks, Inc., which is headquartered in Sunnyvale, California. (Soni Decl., ¶ 12 (also noting that Trapeze Networks was located in Pleasanton, California prior to the Juniper Networks acquisition).) Trapeze Networks offered products, such as the Trapeze Mobility Exchange MX-8 and 802.11 a/b/g Trapeze MP-252, at least as early as September 2004. (*See* Soni Decl., Exhibit x.) During the relevant time-period for prior art, Trapeze Networks was also reported to partner with Nortel Networks to offer mesh networking products. (*See* Soni Decl., Exhibit xi.) Appearing in the Northern District of California, rather than traveling cross-country to do so in this District, would be more convenient for any Trapeze Networks third-party witnesses.

14

"In the context of a patent infringement suit, a court should give particular consideration to individuals who can testify about the technology of the allegedly infringing inventions." *Int'l Sec. Exch., LLC v. Chicago Bd. Options Exh. Inc.*, No. 06-cv-13445(RMB)(THK), 2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007). The majority of NETGEAR witnesses, including employees who work on research, development, and design of the accused Nighthawk Mesh and Orbi Mesh products, are located in the Northern District of California at NETGEAR's headquarters in San Jose, California or in Taiwan, Asia. (Wu Decl., ¶ 16.) In a dispute about these products, "those witnesses' proposed testimony concerns exactly the technology that will determine if and how [NETGEAR] infringed the patents in suit." *Smart Skins LLC v. Microsoft Corp.*, No. 14-cv-10149, ECF No. 34, at 11-12 (S.D.N.Y. Mar. 27, 2015). There are no such witnesses relevant to the accused Nighthawk Mesh and Orbi Mesh products in this District. (Wu Decl., ¶ 13.) Additionally, NETGEAR has identified Johnny Loi (VP, Financial Planning and Analysis) and Belinda Adams (Senior Director, Corporate Marketing) as potential witnesses who are responsible for the sales and marketing of the accused products, as well as Joseph Emmanuel (VP, Wireless Engineering), who heads NETGEAR's RF/Wireless research and development team for the Orbi Mesh and Nighthawk Mesh products. (*Id.* ¶ 20.) These individuals also reside in the Northern District of California and work out of NETGEAR's headquarters in San Jose, California. "[O]fficers and employees who were involved in the . . . sale" of accused products are also "key witnesses" in a patent suit. *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d. 525, 529 (S.D.N.Y. 2004). Moreover, since the majority of NETGEAR's U.S.-based employees are located in San Jose and additional employees knowledgeable about research and development are located in Asia, should additional company witnesses be needed, they most likely would be located in San Jose or Asia. (Wu Decl., ¶¶ 7, 15-20.) Thus, transferring this case to the Northern

District of California will save litigation costs and avoid inconveniencing witnesses from San Jose by forcing them to travel across the country to this District for trial. Similarly, it would be more convenient for the witnesses from Taiwan to travel to the Northern District of California than this District.[11] *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4-*5 (Fed. Cir. Aug. 2, 2021) ("As this court has recognized, 'it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home[.]'") (citing *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)).

In *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, Judge Engelmayer gave weight to the convenience of the witnesses identified by the defendants as likely testifying to "germane" topics. 928 F. Supp. 2d 735, 744 (S.D.N.Y. 2013). Neither the plaintiff's choice of New York (its home forum in *Everlast*), the fact that the relevant contracts were executed in New York, nor the fact that New York law governed the contracts at issue overcame the witness convenience factors favoring transfer in that case. *Id.* at 743, 746. This case bears even less relationship to the Southern District of New York, because here, neither party resides in New York nor do the facts at issue have any connection to New York.

Thus, the convenience of the witnesses strongly favors transfer to the Northern District of California.

---

[11] A search for flights from Taipei (TPE-Taoyuan International Airport) to San Francisco (SFO) on November 20, 2021 (as an example) identified two non-stop flights with durations of 11 hours and 11 hours 15 minutes, respectively. (Soni Decl., ¶ 15; Exhibit xii.) A similar search for flights from Taipei (TPE-Taoyuan International Airport) to LaGuardia Airport (LGA) in New York showed no direct flights on November 20th. (Soni Decl., ¶ 15; Exhibit xiii.) Rather, all flights involved two or more stops and the shortest duration was a flight with two stops—19 hours 50 minutes of travel time, including an hour 45 minutes in Seoul and an hour 25 minutes in Toronto. (*Id.*) There also are no direct flights from Taipei (TPE-Taoyuan International Airport) to John F. Kennedy Airport (JFK) in New York on November 20th either. (Soni Decl., ¶ 15; Exhibit xiv.) Instead, flights involved one or two stops, and the shortest duration was a flight with travel time of 18 hours and 32 minutes that stopped for an hour 45 minutes in San Francisco. (*Id.*)

### b. The Location of the Evidence Favors Transfer

This factor too weighs in favor of transfer since NETGEAR is headquartered in San Jose.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location." *Sentegra, LLC v. Asus Computer Int'l*, No. 1:15-cv-3768-GHW, 2016 WL 3093988, at *5 (S.D.N.Y. June 1, 2016); *see also In re Apple*, 979 F.3d 1332, 1340 (Fed. Cir. 2020). "While advances in technology may alter the weight given to [this] factor[], it is improper to ignore [it] entirely." *In re Link_A_Media Devices Corp*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). "[C]ommon sense suggests that retaining this case in New York imposes some incrementally greater burden, however, slight, on Defendants to copy or transport documents that they would not incur if the case proceeded in" California. *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374-75 (S.D.N.Y. 2006) (finding transfer will reduce burden of shipping documents on all parties). While this factor has less weight given present modes of document access, when the bulk of the relevant documents are stored at a company headquarters, this factor weighs at least slightly in favor of transfer. *Sentegra*, 2016 WL 3093988, at *5.

NETGEAR's records, including source code, technical, financial, sales, accounting, and marketing documents, can be found at NETGEAR's headquarters in San Jose. (Wu Decl., ¶ 21.) No such corporate records are maintained in this District. (*Id.*) Further, relevant witnesses, including employees with knowledge of the design and development, sales, and marketing of the accused products, are in the Northern District of California (or Asia). (*Id.*, ¶ 20.) *See Genentech*, 566 F.3d at 1345 (because "the bulk of the relevant evidence usually comes from the accused infringer . . . the place where the defendant's documents are kept weighs in favor of transfer to that location."); *Apple*, 979 F.3d at 1340 ("[T]he movant need not show that *all* relevant documents are located in the transferee venue" for this factor to favor transfer) (emphasis added).

Therefore, this second factor also weighs in favor of transfer.

### c.     The Convenience of the Parties Favors Transfer

This factor weighs in favor of transfer. While "[t]he convenience of the parties favors transfer where transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant," this factor may slightly favor transfer where the non-movant is not located in the transferee and transferor district. *See Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014) (finding this factor to weigh "slightly in favor of transfer" to Georgia from this District where the moving party's headquarters was in Georgia and the non-moving party's headquarters was in Massachusetts). This is true here. NETGEAR seeks transfer to the Northern District of California because NETGEAR's headquarters and principal place of business is in San Jose, California. (Wu Decl., ¶ 3.) Plaintiff is located in New Jersey, which is located outside both this District and the Northern District of California. Though Plaintiff may have a witness or two in New Jersey—the sole named inventor on the patents and perhaps a prosecuting attorney—as explained above, the majority of NETGEAR's witnesses and documents are located in the Northern District (or Asia). *See* Sections IV.a and IV.b *supra*. *See Hulu*, 2021 WL 3278194, at *4-*5 (finding the convenience of the witnesses and parties to favor transfer "given the overwhelming number of potential witnesses from Hulu in or near California compared to the two from SITO in Texas"). Hence, as in *Hulu*, the convenience of the parties favors transfer or, at minimum, slightly favors transfer.

### d.     The Locus of Operative Facts Is California and Favors Transfer

This factor weighs clearly in favor of transfer to the Northern District of California.

"The location of operative facts is a primary factor." *Dickerson*, 315 F.R.D. at 30. "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Sentegra*, 2016 WL 3093988 at *5. Operative facts in a patent infringement action

include facts relating to the design, development, production and marketing of the accused products. *Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, No. 1:16-cv-1361-GHW, 2017 WL 1498058, at *7 (S.D.N.Y. Apr. 26, 2017). In this case, at least certain of the locus of operative facts are in the Northern District of California, as NETGEAR markets and sells the accused products based on activity in its San Jose office. NETGEAR also designs and develops the accused products in San Jose and Taiwan, Asia. (Wu Decl., ¶ 16.) This work is potentially relevant to, among other issues: (1) whether and to what degree there has been a violation of the patent laws based on sales or offers of sales of an infringing product; (2) the existence and extent of any potential damages; and (3) NETGEAR's alleged knowledge of the asserted patents.

Additionally, the factor "substantially favors transfer from this district when a party 'has not shown that any of the operative facts arose in the Southern District of New York.'" *SBAV LLP v. Porter Bancorp, Inc.*, No. 13-cv-372 (PAE), 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013). Plaintiff has not shown that any of the operative facts arose in this District.

Finally, while this factor is to some extent redundant with other factors in the transfer analysis, it also serves a distinct purpose: vindicating California's interests in having a California jury adjudicate a dispute over intellectual property that is allegedly being infringed by a California corporation. *See Meyers v. Allstate Ins. Co.*, No. 08 Civ. 4769 (DF), 2009 WL 804672, at *3 (S.D.N.Y. Mar. 26, 2009); *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) ("The Supreme Court has long held that there is 'a local interest in having localized controversies decided at home.'") (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)); *Apple*, 979 F.3d at 1344 ("This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'") (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

Thus, the locus of operative facts strongly favors transferring this case.

### e. Availability of Process Over Witnesses Favors Transfer

This factor weighs in favor of transfer. Trapeze Networks, Inc. and third-party prior artists listed on the face of the company's patents, such as Stan Chesnutt (former Director of Software Engineering), James Murphy (former Director/Manager/Architect at Trapeze Networks), and Gary Morain (former Embedded Software Engineer at Trapeze Networks) are located in the Northern District of California. (*See* Soni Decl., ¶ 12; Exhibits xv, xvi, xvii, xviii.) Thus, Trapeze Networks and these individuals are subject to the subpoena power of the Northern District of California, but not of this Court. *See* Fed. R. Civ. P. 45(c)(1)(B); s*ee In re Samsung Elecs. Co.*, 2 F.4th at 1379 (noting that because potential non-party "witnesses reside in Northern California, transfer ensures that the transferee court could compel these individuals to appear"). Thus, this factor weighs in favor of transfer.

### f. The Relative Means of the Parties is Neutral

This factor is neutral in this action between two corporate parties. "Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Sentegra*, 2016 WL 3093988 at *6. This factor carries little weight when, as here, the parties are corporate entities. *Id.* Therefore, this factor is neutral in the transfer analysis.

### g. The Forum's Familiarity with the Governing Law is Neutral

This factor is neutral in this action. "Familiarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts . . . ." *Id.* at *7. Plaintiff's claims raise questions of patent law and "any district court may handle a patent case with equal skill." *See id.* Accordingly, this factor is neutral in the transfer analysis.

### h. Plaintiff's Choice of Forum Should be Accorded Little, If Any, Weight Against Transfer

A plaintiff's choice of forum is traditionally afforded considerable deference, but here, Plaintiff's choice of forum should be entitled only to minimal deference, because Plaintiff is a non-resident non-practicing entity and, as explained above, this District bears no relationship to the operative facts. *See Smart Skins*, No. 14-cv-10149, ECF No. 34, at 8-9; *Dickerson*, 315 F.R.D. at 32 ("Where 'the forum selected is not plaintiff's home forum or the place where the operative facts of the action occurred . . . this diminishes the weight assigned to'" plaintiff's choice of forum as a factor); *In re Link_A_Media*, 662 F.3d at 1223 (noting that plaintiff's choice of forum is granted less deference when it is not its home forum). This lack of deference is to discourage forum shopping by the plaintiff. *Hix v. Morgan Stanley & Co.*, No. 15CV217-LTS-JCF, 2015 WL 1726548, at *2 (S.D.N.Y. Apr. 15, 2015).

Here, Plaintiff's principal place of business is at 62 Burlington Road, Murray Hill, New Jersey. (Complaint, ¶ 1.) Plaintiff has no ties to this District.

Under these facts, the eighth factor (Plaintiff's choice of forum) should be granted little, if any, weight in the transfer analysis. Given that Plaintiff maintained its choice of forum as this District here even after being provided with facts and cases indicating the District is an improper venue, this factor is at best neutral.

### i. Trial Efficiency and The Interest of Justice Favor Transfer

The last factor also weighs in favor of transfer. Time to civil trial is faster in the Northern District of California than in this District.

"The Court's consideration of whether transfer is in the interest of justice is 'based on the totality of the circumstances,'" and "relates primarily to issues of judicial economy." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005); *Sentegra*,

2016 WL 3093988 at *7. Docket conditions and calendar congestion are also proper factors to be accorded some weight in this analysis. *Indian Harbor*, 419 F. Supp. 2d at 407.

The statistics from LexMachina show that for the period of January 1, 2009 to October 25, 2021, patent cases in the Northern District of California reached trial after a median of 866 days while patent cases in this District have reached trial after a median of 909 days.



(Soni Decl., ¶ 20.) Likewise, the statistics from the most recent National Judicial Case Load Report for the period ending in June 2021 support transfer to the Northern District of California. The median time to trial for civil cases in the Northern District of California is 26.9 months (818 days) compared to 29.8 months (906 days) in this District. (*Compare* Soni Decl., Exhibit xix at 67 *with id.* at 12.) This District also had 19,216 pending cases as of June 2021, while the Northern District of California had 14,157. (*Id.*) These are all differences to which the Court should give appropriate weight. *See Indian Harbor*, 419 F. Supp. 2d at 407.

Therefore, the ninth and final factor weighs in favor of transfer.

## V.     CONCLUSION

Venue is improper in this case for NETGEAR, as NETGEAR neither resides in this District nor has a regular and established place of business in this District. The Court should therefore dismiss Plaintiff's Complaint, or in lieu of dismissal, the Court should transfer the case to a more

convenient forum, the Northern District of California, in the interest of justice under 28 U.S.C.

§ 1406(a).


Dated: November 5, 2021

Respectfully submitted,

*/s/ Joseph M. Drayton*
Joseph Drayton (JD-8670)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
jdrayton@cooley.com

Reuben Chen (*pro hac vice*)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
rchen@cooley.com

Naina Soni (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
nsoni@cooley.com

*Counsel for Defendant*
*NETGEAR, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 5, 2021, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Joseph M. Drayton*___
Joseph Drayton